UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

**1:18 MC 128**

--------------------------------------------------------------X

In re Application of CFG Sp. z o.o. Sp. k., for an
Order Pursuant to 28 U.S.C. § 1782 Granting
Leave to Obtain Discovery For Use in a Foreign
Proceeding

--------------------------------------------------------------X

Case No. _____

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

Petitioner CFG Sp. z o.o. Sp. k. ("Petitioner") is a Polish limited liability

company embroiled in a multi-million-dollar dispute with its former commercial tenant, Diebold

Poland Sp. z o.o. ("Diebold Poland"). After Diebold Poland breached its rental contract,

Petitioner filed suit in Circuit Court, in Warsaw, Poland. In support of that action, Petitioner now

seeks an order pursuant to 28 U.S.C. § 1782 granting it depositions and document discovery

from Diebold Poland's former directors, and its ultimate parent company, which are located in

this district. This application fits squarely within the purpose and requirements of § 1782: The

information sought is relevant and admissible in the Polish proceedings, and is located in this

district, but inaccessible to Petitioner without the aid of this Court.

### FACTUAL BACKGROUND

Petitioner is a commercial property management firm, operating over 300 malls

throughout Poland. *See* Declaration of Rafal Roszkowski in Support of Application to Conduct

Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782, dated December 7,

2018 (the "Roszkowski Decl."), ¶ 4. Diebold Poland was an entity—now apparently defunct—in

the business of installing and operating automatic teller machines. *Id.* at ¶ 6. In 2008, Diebold

Poland approached Petitioner with the proposal that it would lease space in eight of Petitioner's

properties to install ATMs, with the rent calculated under a hybrid structure entitling Petitioner

to the greater of a specified minimum rent or 50% of the monthly net profit generated by the

ATMs. *Id.* at ¶ 7. The two companies entered into an agreement in March 2008 under which

Diebold Poland installed ATMs at five locations on the terms it proposed, and, after nine months,

expanded their agreement to include twenty-three locations. *Id.* at ¶ 8. To allow Petitioner to

monitor compliance with the rental structure that it proposed, Diebold Poland was required to

provide monthly operational reports for each ATM location. *Id.* Because each failure to furnish a

report corresponded to a month of potentially underpaid rent, the parties agreed that Diebold

would pay liquidated damages for each reporting failure. *Id.*

Diebold Poland failed to provide the reports or was delayed in delivering the

reports to Petitioner starting with the March 2009 report. *Id.* at ¶ 9. In December 2011, Diebold

Poland sold its ATM network in Poland to Euronet Sp. z o.o., assigning its leases in Petitioner's

properties and terminating its contractual relationship with Petitioner shortly thereafter. *Id.* at ¶ 9.

After the termination, Petitioner determined that Diebold Poland owed it over PLN 23 million

(USD 6.2 million), and demanded payment, along with the outstanding ATM transactional

reports. *Id.* at ¶ 11. Diebold Poland rejected this demand, and, on April 8, 2013, Petitioner

commenced a civil action against Diebold Poland in Warsaw Circuit Court under File No. XVI

GC 305/13 (the "Polish Proceeding"), seeking compensatory and liquidated damages in excess

of PLN 80 million (USD 20.3 million) with interest, supplemental compensatory damages for

overdue rent based upon withheld records of financial transactions at the ATM locations, an

order compelling production of books and records showing profits generated by locations subject

to the Agreement, and other relief. *Id.* at ¶ 12. Diebold Poland moved to dismiss the Polish

Proceeding. *Id.* at ¶ 14. Its motion was granted in part, but reversed on appeal, where the

Appellate Court ordered Diebold Poland to pay Petitioner supplemental lease payments on an

interim basis, and remanded to the Circuit Court for further proceedings, *id.* at ¶¶ 14-15,

including an evidentiary hearing that was held on December 5, 2018. *Id.* at ¶ 18. The matter

remains *sub judice* before the Circuit Court. *Id.*

Petitioner informed the presiding judge about the instant application, and may

submit any additional evidence it obtains for the Circuit Court's consideration pending the

decision on the issues raised the hearing. *Id.* The Circuit Court may also reopen the record after

its decision should new evidence come to light. *Id.* Moreover, under the Polish Code of Civil

Procedure, the parties may introduce new evidence into the record when they take an appeal; that

new evidence would then be considered by the Appellate Court, which may also grant additional

time to the parties to permit collection and transmittal in proper form of discovery obtained in the

U.S. *Id.*

After the Appellate Court entered an interim award of damages in Petitioner's

favor—which is immediately enforceable in Polish civil procedure—Petitioner spent over a year

trying to collect from Diebold Poland. *Id.* at ¶ 16. Eventually, the President of Petitioner's

Management Board (equivalent to the Board of Directors of an American corporation) sent a

letter directly to the headquarters of Diebold Nixdorf, Inc. ("Diebold Nixdorf"), Diebold

Poland's ultimate parent entity, in North Canton, Ohio. *Id.* In response, on March 2018, Diebold

Nixdorf's Vice President, Associate General Counsel Jason Hollander responded, asking for

payment wiring instructions. *Id.* Petitioner finally received payment of the supplemental lease

amounts it was awarded on appeal, more than a year after the Appellate Court's December 2016

ruling. *Id.*

In addition to failing to provide Petitioner with the transactional reports for its ATM network, Diebold Poland failed to file annual reports with KRS, the Polish national corporate registry, for fiscal years 2015 through 2017. *Id.* at ¶¶ 10, 17. All corporate entities are obligated to file these reports in Poland; failure to do so is a basis for criminal and civil liability. *Id.* at ¶ 10. Thus, Diebold's failure to file, combined with its transfer of its assets to a new entity, Diebold Nixdorf, Sp. z o.o. in 2015, creates real questions about Diebold Poland's ongoing viability as an entity and a judgment creditor. *Id.* at ¶ 10. These issues will be joined before the court in the Polish Proceeding. *Id.* at ¶ 24.

Because of the way that Diebold Poland chose to operate, certain evidence that could be highly probative of the issues in the Polish Proceeding is located in this district and could be obtained through the standard tools provided for in the Federal Rules of Civil Procedure. In particular, Diebold Nixdorf was responsible for preparing consolidated financial statements for Diebold Poland, *id.* at ¶ 5, and two former members of Diebold Poland's Management Board during the years at issue in the Polish Proceeding— Amy L. Miller, and Chad F. Hesse—resided and currently reside and do business within the Northern District of Ohio. *Id.* at ¶¶ 20-21. It is likely that Diebold Nixdorf and the former directors have information about (a) Diebold Poland's record-keeping practices, including its failure to meet its reporting obligations under its agreement with Petitioner; (b) Diebold Poland's volume of ATM transactions—information that was never reported to Petitioner, but that had to be relevant to the decision to sell to Euronext; (c) Diebold Poland's operating profits, as relevant to its rental payment obligations to Petitioner; and (d) Diebold Poland's transfer of assets to a related entity during the pendency of this dispute. Additionally, the former directors can authenticate certain documents believed to be Diebold Poland records.

In Poland, as in most civil law jurisdictions, parties may offer whatever evidence they have to support their case, but do not have access to a mechanism to obtain discovery of information—uniquely in possession of their counterparties, let alone non-parties—that would establish their claims. *Id.* at ¶ 19. Importantly, the rules of the Polish Code of Civil Procedure do not prohibit a party from obtaining relevant documentation through discovery proceedings in another jurisdiction where the parties are amenable to process. *Id.* at ¶ 20. Thus, were the Court to grant this application, Petitioner would be able to introduce any discovery obtained to support its case in the Polish Proceeding. And, since Diebold Nixdorf and the members of the Management Board are not parties to the Polish Proceeding—and, in the case of the two former members, Miller and Hesse, not affiliated at all with any entity related in any way to Diebold Poland—this application is the only procedure available to obtain the discovery sought.

## ARGUMENT

**I. This Court Has Jurisdiction to Order the Requested Discovery.**

Section 1782, pursuant to which this application is made, provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign . . . tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. 1782(a). Accordingly, a district court may order discovery where (a) the discovery is sought from a person "found" in this district, (b) the discovery is "for use in a proceeding" before a foreign "tribunal," and (c) the applicant is an "interested person" before that tribunal. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004); *In re Application Pursuant to*

*28 U.S.C. Sec. 1782 for Discovery from Slawomir Kaczor and Tomasz Rogucki*, No. 1:14-mc-44, 2014 WL 4181618 (S.D. Oh. Aug. 21, 2014) ("Kaczor") at *1.[1]

Petitioner unequivocally meets the statutory requirements of § 1782. The contemplated subpoenas are addressed to two individuals with home and business addresses in this district and a corporation with its global headquarters in this district. Roszkowski Decl. at ¶¶ 20-21, 26. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 595 (7th Cir. 2011) (reversing denial of application under § 1782 filed in "the federal district court for the district in which the Biomet corporate family, which is international, has its headquarters.").[2] The discovery is sought for a submission in civil litigation before a Polish court, which is a use in a proceeding before a "foreign tribunal" for the purposes of § 1782. *Kaczor* at *2. *See also*, *Intel Corp.*, 542 U.S. at 258 ("The term 'tribunal' . . . includes . . . conventional civil, commercial, criminal, and administrative courts."). Petitioner is a litigant before the Polish court, and thus the paradigmatic "interested party." Roszkowski Decl. at ¶¶ 12-15, 17; *Kaczor* at *2; *see also Intel Corp.,* 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."). Based on the reasons set forth above, the requirements of the statute are easily satisfied in this matter.

## II.   The Discretionary Factors Strongly Favor Granting Petitioner's Application.

Once the applicant has made a showing that the Court has authority to grant the relief sought under § 1782, it is within the Court's discretion to order the sought-after discovery. In considering § 1782 applications, courts have emphasized the need to keep in mind the "twin

---

[1] The *Kaczor* case is the only case in either district in Ohio addressing an application under § 1782 that Petitioner has been able to identify. In the absence of other controlling or persuasive authority from this Court or the Court of Appeals for the Sixth Circuit, Petitioner will refer to authorities from other Circuit Courts that have confronted these issues.

[2] In the *Kaczor* case, though many of the factors weighed in favor of granting the application, the court held that the witnesses from whom discovery was sought were only transiently passing through the district, and so were not "found" there for purposes of § 1782. This issue is not present in the instant application.

aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Kaczor* at \*2 (citations omitted); *see also Intel Corp.*, 542 U.S. at 252 (same); *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (same). In deciding to exercise its discretion, courts consider: (1) whether or not the person from whom discovery is sought is a party in the foreign proceeding or instead a nonparty; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or agency abroad to U.S. federal court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other important policies of the foreign country; and (4) whether the request is unduly intrusive or burdensome. *Kaczor* at \*2; *Intel Corp.* at 264-65. Application of these criteria here supports Petitioner's application.

First, neither Diebold Nixdorf nor the two individuals from whom discovery is sought are parties in the Polish Proceeding. Miller and Hesse have no ongoing relationship whatsoever to Diebold Poland, having resigned from its Management Board in 2013 and 2015, respectively. Roszkowski Decl. at ¶¶ 20-21. Diebold Nixdorf is the ultimate owner of Diebold Poland, but at least one corporate entity stands between them, and, like the individuals, it is located beyond the jurisdiction of the Polish court. Indeed, discovery from Diebold Nixdorf is especially appropriate here because Diebold Poland appears to be defunct, and Diebold Nixdorf has officially been responsible for consolidating and reporting Diebold Poland's financial reports. Moreover, even if the Polish court were somehow able to order Diebold Nixdorf to produce documents and witnesses in Poland, that would not be a basis to deny Petitioner's application. *See Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 98 (2d Cir. 2009) (affirming grant of § 1782 petition addressed to a U.S. parent entity of a foreign subsidiary doing business

in the jurisdiction where the proceeding was pending, where there was no suggestion that the subsidiary was defunct).

Second, a Polish court presiding over a civil lawsuit is hospitable to any relevant evidence the parties may marshal. *See* Roszkowski Decl. at ¶ 19, *Kaczor* at \*4 ("There is nothing in the record before the Court to suggest that Poland or Polish courts would not be receptive to the assistance sought here. . . . [Petitioner] has made a preliminary showing, based on affidavits of his Polish attorneys, that the discovery sought would be discoverable under the applicable Polish procedural rules. Accordingly, the second factor weighs in favor of granting the application.").

Third, this discovery is not being sought in an attempt to circumvent Polish proof-gathering restrictions. Courts customarily do not find a foreign tribunal to be unreceptive to judicial assistance from the United States, unless there is authoritative proof from the foreign tribunal that it would reject evidence obtained through Section 1782 request. *Euromepa S.A. v. R. Esmerian Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995); *see also*, *Intel Corp.*, 542 U.S. at 261-63. No such position has been taken by the Polish courts, whose rules do not prohibit a party from obtaining evidence through discovery proceedings in a foreign jurisdiction. *See* Roszkowski Decl. at ¶ 19. Nor is this a case where parties to a dispute with no connection to the United States hale foreign witnesses to an American court—Petitioner is seeking discovery in the home district of the witnesses and document custodians who have the evidence it needs to support its case.

Finally, Petitioner's requests are neither burdensome nor intrusive. *See* Declaration of Arthur M. Kaufman, dated December 10, 2018, Exhibit A. Petitioner seeks no documents at all from the former members of the Management Board—only relatively

- 8 -

circumscribed depositions into the circumstances surrounding Diebold Poland's dealings with Petitioner. Petitioner's document request and deposition subpoena to Diebold Nixdorf is limited to subjects relevant to claims in the Polish Proceeding, primarily focusing on information that Diebold Poland was already required to produce to Petitioner, which cannot reasonably be considered intrusive or burdensome. Petitioner does not seek information that could be obtained otherwise, would be useless in the Polish Proceeding, or is excessively voluminous or otherwise unfair to demand. *Cf. Biomet, Inc.*, 633 F.3d at 594-95 (identifying ways in which an application might be an abuse of § 1782, none of which apply here). Accordingly, the four discretionary factors weigh in Petitioner's favor.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court issue an order authorizing the issuance of three subpoenas requested, in substantially the same form as the subpoenas *duces tecum* and *ad testificandum* attached as Exhibit A to the Declaration of Arthur M. Kaufman filed in support of this application for the production of specified documents and taking of depositions for use in the Polish Proceeding.

Dated:    December 10, 2018

Respectfully submitted,

*/s/ Arthur M. Kaufman*
Arthur Kaufman, Esq. (0017724)
**Kaufman, Drozdowski & Grendell, LLC**
29525 Chagrin Blvd, Suite 250
Pepper Pike, Ohio 44124
440.462.6500 – telephone
440.462.6504 – facsimile
ak@kdglegal.com

*One of the Attorneys for Petitioner*

In re Application Pursuant to 28 U.S.C. Sec. 1782, Not Reported in F.Supp.3d (2014)

2014 WL 4181618
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Western Division.

In re APPLICATION PURSUANT TO 28 U.S.C. § 1782 for
Discovery from Slawomir Kaczor and Tomasz Rogucki, Applicant.

No. 1:14–mc–44.
|
Signed Aug. 21, 2014.

**Attorneys and Law Firms**

Priscilla L. Hapner, Columbus, OH, for Petitioner.

**ORDER**

KAREN L. LITKOVITZ, United States Magistrate Judge.

**\*1** This case involves the issue of whether Applicant Sebastian Stygar (Stygar) may conduct discovery on Slawomir Kaczor (Kaczor) and Tomasz Rogucki (Rogucki), residents of Poland, in connection with pending and anticipated lawsuits in Poland. This matter is before the Court on Stygar's ex parte application and supporting memorandum for an order pursuant to 28 U.S.C. § 1782 to conduct discovery on Kaczor and Rogucki for use in foreign proceedings (Doc. 1; Doc. 1–2). For the reasons that follow, the application is denied.

**I. Background**

Stygar filed this "emergency" ex parte application on August 20, 2014, for leave to serve subpoenas on Kaczor and Rogucki. Stygar represents that he, along with Kaczor and Rogucki, are primary shareholders and managing board members in several limited liability companies referred to collectively as the Lingaro Entities .[1] (Doc. 1 at 5). Stygar asserts that: he was "frozen out" of his management role with the Lingaro Entities; his share of the entities was wrongfully devalued; and that unlawful non-compete provisions were enacted to prevent him from competing with the Lingaro Entities. (*Id.* at 3, 5–6). Stygar filed several lawsuits in Poland (the Polish Proceedings) naming the Lingaro Entities as defendants; Stygar anticipates seeking injunctive relief against the Lingaro Entities and their dissolution through the Polish Proceedings. (*Id.* at 7). Stygar maintains that he is entitled to review the Lingaro Entities' documents and records as a shareholder, but when he attempted inspections on August 6 and August 8, 2014, the management board of the Lingaro Entities objected. (*Id.* at 8). Stygar represents that Kaczor and Rogucki are in possession of evidence that is relevant to the Polish Proceedings, such as correspondence and commercial agreements and testimony. (*Id.* at 9). Stygar further represents that Kaczor and Rogucki are "found in" the Southern District of Ohio because they occasionally travel to Cincinnati for work. (*Id.* at 10). Specifically, Stygar asserts that it is believed that Kaczor can be found within this District until August 22, 2014. (*Id.* at 1).[2] Stygar therefore filed the instant application seeking leave to serve subpoenas *duces tecum* and *ad testificandum* on Kaczor and Rogucki pursuant to Section 1782. The proposed subpoenas command Kaczor and Rogucki to appear at depositions in Cincinnati, Ohio on September 9, 2014, and to produce various documents at that time. (*Id.,* Ex. A, Proposed Subpoenas). The representations stated above are supported by affidavits from various Polish attorneys representing Stygar in the Polish Proceedings.[3] *See* Doc. 1, Exhs. B, C, D, F.

## II. Legal Standard

Section 1782 provides in relevant part, "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal...." 28 U.S.C. § 1782(a). A district court may grant an application pursuant to Section 1782 when: (1) the person from whom the discovery is sought "resides or is found" within the district; (2) the discovery is "for use in a foreign or international tribunal"; and (3) the application is made by a foreign or international tribunal or an "interested person" in the foreign proceeding. *See Intel Corp. v. Advanced Micro Devices Inc. .,* 542 U.S. 241, 264, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). "[A]n ex parte application is an acceptable method for seeking discovery pursuant to 28 U.S.C. § 1782 ." *In re Application of Ontario Principals' Council,* No. 14–me–50, 2014 WL 3845082, at *2 (D.Ariz. Aug.1,2014) (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan,* 539 F.2d 1216, 1219 (9th Cir.1976)).

**\*2** District Courts have wide discretion to grant or deny Section 1782 applications. *See Lazaridis v. Int Ctr. for Missing & Exploited Children,* 473 F. Apia'x 2, 4 (D.C.Cir.2012); *In re Esses,* 101 F.3d 873, 876 (2d Cir.1996) ("Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems.") Indeed, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp.,* 542 U.S. at 264. The Supreme Court has provided a non-exhaustive list of factors that a district court should consider in assessing a Section 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding such that the discovery sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Id.* at 264–65. In addition, "district courts must exercise their discretion under Section 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Application of Chevron Corp.,* 709 F.Supp.2d 283, 290 (S.D.N.Y.2010) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.,* 376 F.3d 79, 84 (2d Cir.2004)). *See also Intel Corp.,* 542 U.S. at 252.

## III. Analysis

### A. The Statutory Factors

Stygar's application must be denied because it does meet the statutory requirements of 28 U.S.C. § 1782. The Court finds that the application meets two of the three criteria: the discovery sought is for use in the Polish Proceedings, *i.e.,* a foreign tribunal, and the application was made by a party to those proceedings, *i.e.,* an "interested person." *See Intel Corp.,* 542 U.S. at 264. However, Stygar has not put forth evidence showing that Kaczor or Rogucki are "found in" this district for purposes of Section 1782(a).

As noted above, Stygar's representation that both individuals travel to Cincinnati, Ohio for business from "time to time" is supported by affidavit evidence from one of his Polish attorneys. *See* Doc. 1, Ex. F, 116. The mere fact that a person occasionally travels to this District does not establish that they may be "found" here for Section 1782 purposes. While the application states that "[i]t is believed that Kaczor can be found within this [D]istrict [until] August 22, 2014[,]" Doc. 1 at 1, there is nothing in the record from which the Court can conclude that this "belief" (from an unidentified source) has any basis in fact. Moreover, there is no similar representation regarding Rogucki being currently present in this District. In the absence of any evidence indicating that Kaczor and Rogucki, the persons from whom Stygar seeks discovery, can be "found" in the District, Stygar has failed to make the requisite *prima facie* showing of residency for Section 1782 purposes. [4] *See In re Application of Thai–Lao Lignite (Thailand) Co., Ltd.,* 821 F.Supp.2d 289 (D.D.C.2011) (dismissing Section 1782 application where applicant failed to provide a basis for assertions that the entity from whom the discovery

was sought had "systematic and continuous contacts" in the district). *Cf. In re Edelman,* 295 F.3d 171, 180 (2d Cir.2002) (holding that district court erred in quashing subpoena and holding that for purposes of Section 1782 a person is "found" in the district if they are "served with a subpoena while physically present in the district of the court that issued the discovery order....").[5]

**\*3** Assuming, *arguendo,* that Kaczor and Rogucki can be considered "found" in the Southern District of Ohio within the meaning of Section 1782(a), they cannot be compelled to appear for deposition or produce documents under Fed.R.Civ.P. 45(c). A subpoena under Rule 45 can command a person to attend a deposition:

(A) within 100 miles of where the person resides, is employed, or *regularly* transacts business in person; or

(B) within the state where the person resides, is employed, or *regularly* transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

Fed.R.Civ.P. 45(c)(1) (emphasis added). Likewise, a subpoena may command the production of documents "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed.R.Civ.P. 45(c)(2), Stygar has not shown that either Kaczor or Rogucki resides, is employed, or "regularly transacts business in person" in the Southern District of Ohio. The only evidence of any ties to this District is the affidavit of Mr. Mikosz who avers that Kaczor and Rogucki "travel to Cincinnati, Ohio, *from time to time* for business ...." (Doc. 1, Ex, F, ¶ 6) (emphasis added). Although the affidavit alleges that Kaczor and Rogucki travel to Cincinnati "since Procter & Gamble Inc. in Cincinnati, Ohio remains the biggest customer of the Lingaro Entities" (*id.*), there is no evidence that these individuals personally transact business on a regular basis within 100 miles of this District. *See* 28 U.S.C. § 1782(a) ("the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."). *See M'Baye v. New Jersey Sports Production, Inc.,* 246 F.R.D. 205, 206–07 (S.D.N.Y.2007) (citing cases) (infrequent visits are insufficient "to render a person amenable to a subpoena" under Rule 45's regularity requirement). Stygar's application is silent with respect to how often and for how long Kaczor and Rogucki travel to Cincinnati, Ohio. In the absence of any information showing they "regularly transact business" in the area and in consideration of their status as Polish residents, the undersigned finds that the proposed subpoenas do not comply with Fed.R.Civ.P. 45(c)(1).

Stygar's application is therefore denied for failure to meet the statutory requirements of Section 1782 and the dictates of Federal Rule of Civil Procedure 45.

### B. The Discretionary Factors

Even assuming that the application met Section 1782's statutory requirements, the Court, in exercising its discretion, nevertheless denies the application. "In examining a party's request to conduct discovery for use in a foreign proceeding, courts have read into § 1782 a threshold requirement that the material sought be located in the United States." *In re Certain Funds, Accounts, & lor Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp.,* No. 14–cv–1801, 2014 WL 3404955, at \*4 (S.D.N.Y. July 9, 2014) (citing *In re Kreke Immobilien KG,* No. 13–mc–110, 2013 WL 5966916, at \*4 (S.D.N.Y. Nov.8, 2013)). "[F]or purposes of § 1782(a), witnesses cannot be compelled to produce documents located outside of the United States." *In re Godfrey,* 526 F.Supp.2d 417, 423 (S.D.N.Y.2007). The legislative history of Section 1782 establishes that it "was intended to aid in obtaining oral and documentary evidence in the United States ... and was not intended to provide discovery of evidence maintain[ed] within a foreign district." *Id.* (internal quotations and citations omitted).

**\*4** The record before the Court establishes that the documents sought by Stygar are found in Poland, not the United States. Counsel for Stygar attests that he and Stygar attempted to obtain the sought after documents from the Lingaro Entities during inspections of the Polish companies on August 6 and August 8, 2014. *See* Doc. 1, Ex. D, ¶¶ 5–7. Stygar

represents that these inspections were not satisfactory because the Lingaro Entities raised objections; Stygar does not claim that the records were not held by the Lingaro Entities at their Polish offices. *See* Doc. 1 at 8. There is nothing in the record to suggest that the documents sought by Stygar are located in the United States. Because the record reflects that the documents sought by Stygar are held by the Lingaro Entities in Poland, the Court finds in its discretion that the application should be denied in consideration of the legislative intent of Section 1782. *See In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.,* 821 F.Supp.2d at 297–98 (where documents were not located in the United States but in France, where the foreign litigation was pending, "the location of the information militate[d] against granting the [application].").

Consideration of the specific *Intel* factors leads to the same conclusion. The first factor is whether Kaczor and Rogucki are "participant[s] in the foreign proceeding." *Intel,* 542 U.S. at 264. If they are, then "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* (citations omitted). By contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdiction reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* (citation omitted). The Lingaro Entities are the named defendants in the various Polish Proceedings. Stygar has put forth evidence showing that Kaczor and Rogucki, along with Stygar, hold approximately 2/3 of the shares of the Lingaro Entities, *See* Doc. 1, Ex. F. ¶ 6. Further, Stygar represents that Kaczor and Rogucki are insiders and managing board members in the Lingaro Entities. *See* Doc. 1 at 3, 5. Given their relationship with and considerable interest in the Lingaro Entities, the Court finds that Kaczor and Rogucki will necessarily be "participants" in the Polish Proceedings. Accordingly, Stygar should be able to obtain the discovery he seeks from the courts in Poland.

The second factor—"the nature of the foreign tribunal, the characters of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,"—weighs in favor of granting the application. There is nothing in the record before the Court to suggest that Poland or Polish courts would not be receptive to the assistance sought here. There is no requirement that Stygar present evidence showing that the Polish courts have reciprocal procedures available or that the discovery sought would be admissible. *See, e.g., John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 133 (3d Cir.1985). Stygar has made a preliminary showing, based on affidavits of his Polish attorneys, that the discovery sought would be discoverable under the applicable Polish procedural rules. *See* Doc. 1, Ex. F, ¶¶ 7–9. Accordingly, the second factor weighs in favor of granting the application.

**\*5** In contrast, the third factor—whether the Section 1782 request conceals an attempt to circumvent Polish proof-gathering restrictions—is not so clear. Generally, Section 1782 applications are filed by residents of foreign countries seeking discovery from citizens or residents of the United States because the foreign tribunals lack jurisdiction to compel production of the requested discovery. Here, all parties involved are Polish residents and citizens, and the judicial proceedings are pending before Polish courts. It is entirely unclear why Stygar seeks to obtain the requested discovery across international waters when he presumably could do so through the Polish Proceedings. Stygar's application does not reflect that he has requested any of the discovery he seeks through the Polish courts nor does he contend that those courts would not be able to grant him the relief requested. Indeed, Stygar's memorandum in support of his application provides that the evidence requested here is discoverable under Poland's procedural rules. *See* Doc. 1–2 at 16–17. Stygar's failure to provide a reasonable explanation for his decision to seek assistance from a United States federal court to get discovery that is held in Poland by Polish residents and citizens, raises the specter of abusive litigation tactics. *See Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada,* 384 F.Supp.2d 45, 54 (D.D.C.2005) ("The Court is wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit."). Accordingly, the Court, in its discretion, finds that the third *Intel* factor weighs against granting the application.

The fourth factor—whether the requests are unduly intrusive or burdensome—likewise weighs against granting the application. The proposed subpoenas seek to command Kaczor and Rogucki to appear at depositions in Cincinnati,

**In re Application Pursuant to 28 U.S.C. Sec. 1782, Not Reported in F.Supp.3d (2014)**

Ohio on September 9, 2014. However, Stygar's application reflects that Kaczor will not be in Cincinnati, Ohio after August 22, 2014, presumably because Kaczor will be returning to Poland, where he lives. There is also no indication whatsoever that Rogucki has any plans to be in Cincinnati, Ohio on the proposed deposition date. Commanding foreign citizens to travel internationally to attend a deposition is inherently burdensome; further, it is prohibited under Federal Rule of Civil Procedure 45(c) as discussed *supra*. As there is no evidence establishing that either Kaczor or Rogucki will be present in Cincinnati, Ohio on September 9, 2014, the proposed subpoenas are unduly burdensome and the fourth *Intel* factor weighs against granting the instant application.

For the above reasons, the application for subpoenas pursuant to 28 U.S.C. § 1782 (Doc. 1) is **DENIED.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4181618

Footnotes

1   Stygar claims that the Lingaro Entities include the following entities registered and existing as limited liability companies in Poland: Lingaro Sp. z o.o.; Lingaro Group Sp. z o.o.; Lingaro eCommerce Sp. z o.o.; and Lingaro Services Sp. z o.o. (Doc. 1 at 2).

2   Stygar asserts that the instant application should be reviewed on an "emergency" basis given Kaczor's anticipated August 22, 2014 departure. (Doc. 1 at 1). Giving Stygar the benefit of the doubt, the Court has issued the instant order post haste.

3   The Court notes that while Mr. Andrezej Mikosz attests that Kaczor and Rogucki are "found" within this District because they travel to Cincinnati, Ohio from time to time for business, there is no evidentiary support for Stygar's representation that Kaczor is currently in the District. *See* Doc. 1, Ex. F, ¶ 6. Moreover, aside from the vague statement that Rogucki travels to Cincinnati, Ohio from time to time for business, there is no representation or evidence in the record at all as to when Rogucki may be found in the District.

4   Notably, every case cited by Stygar in his memorandum in support of the Section 1782 application involved situations where the person or entity from whom the discovery was sought resided in the district where the applications were filed. In contrast, Kaczor and Rogucki are residents and citizens of Poland, and not the United States. *See* Doc. 1 at 1, 4.

5   *In re Edelman* involved a Section 1782 application to serve subpoenas on individuals and entities residing or found in the Southern District of New York for purposes of obtaining discovery for pending litigation in France. *In re Edelman*, 295 F.3d at 174. The order "included a blanket authorization for the issuance of subpoenas for deposition testimony to any 'additional individuals and entities with knowledge and information.' " *Id.* A subpoena was served on the respondent—a French citizen and resident during a trip to New York City. *Id.* The respondent filed a motion to quash the subpoena, asserting the words "is found" in Section 1782 "mean that a prospective deponent must be in the district at the precise time when the district court issues the discovery order." *Id.* at 177. The Second Circuit Court of Appeals disagreed with the respondent's statutory interpretation and found that because the respondent had been personally served in the district, he was "found" within it for purposes of Section 1782. *Id.* at 180. The instant matter is distinguishable because there is no evidence that either Kaczor or Rogucki has been personally served with a subpoena.

**End of Document**                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.